UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

**TRINA OWENS**

          **Debtor**

Case No.  HK 13-02404
Honorable Jeffrey R. Hughes
Chapter 7

DEBTOR'S RESPONSE TO UNITED STATES TRUSTEE'S MOTION TO DISMISS
CASE PURSUANT TO 11 U.S.C. SECTIONS 707(b) (2) and 707(b)(3)

Trina Owens, through her attorney Leon F. Schmelzer, respectfully asks the Court to deny the United States Trustee's Motion to Dismiss for Abuse Pursuant to 11 U.S. C. 700(b)(1), (b) (2) and (b) (3) for the reasons that these section do not apply to a case where the **debts are not primarily consumer debts** and that granting a discharge under Chapter 7 of the Bankruptcy Code would not constitute an abuse of the Bankruptcy Code, and states in support the following:

*I. Response to General Allegations*

1. Admit

2. Admit

3. Admit

4. Admit

5. Deny, because these **debts are not primarily consumer debts**.  (Note: the Means Test (B 22A) has been amended to correct this error). This assertion is made on the following basis:

a. Pursuant to 11 USC 707(b)(1), ". . . the United States Trustee . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts."

b. Form B22A asks at the beginning if the debts are consumer debts and waives the completion of the form upon the declaration that the debts are not "primarily" consumer debts. [This was originally and subsequently filed incorrectly and has been corrected and an amendment filed.]

c. 11 USC 101 (8) defines "consumer debt" as debt incurred by an individual primarily for a personal, family, or household purpose.

d. The Debtor's debts as reported on her schedules are as follows:

| Consumer Debt |  | Tax Debt |  | Student Loans |  |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
| Gabriels CU (car) | 1,000.00 | Federal Income Tax | 21,312.13 | US Dept of Ed | 54,750.26 |
| Capital 1 | 724.10 | City of Battle Creek | 18.00 |  |  |
| Discover | 1,053.59 | State of MI | 4,197.00 |  |  |
| Household bank | 1,326.32 |  |  |  |  |
| JC Penney | 1,335.04 |  |  |  |  |
| Meijer | 121.40 |  |  |  |  |
| Omni CU | 485.00 |  |  |  |  |
| Orchard Bank | 967.58 |  |  |  |  |
| Radiology con. | 45.00 |  |  |  |  |
| Bronson | 45.00 |  |  |  |  |
|  |  |  |  |  |  |
| Total | 7,103.03 | Total | 25,527.13 | Total | 54,750.26 |

    e. In the case *In re Bell*, 65 BR 575, 577-578 (Banks ED Mich. 1986), the court held:

[W]here the total amount of the consumer debt is substantially less than the total amount of non-consumer debt, the debts cannot be considered primarily consumer debts, even if there is a greater number of consumer debts. On the other hand, when the amount of the consumer debt is substantially greater than the amount of the non-consumer debt, the debts must be considered primarily consumer debts even if there is a greater number of non-consumer debts. Finally, when the consumer debt and the non-consumer debts are approximately equal, the Court should consider the relative numbers of consumer and non-consumer debts.

    f. "'Primarily' means 'for the most part.' *Webster's Ninth New Collegiate Dictionary* 934 (1984). Thus, when "the most part" - i.e., more than half-of the dollar amount owed is consumer debt - the statutory threshold is passed. *In re Kelly,* 841 F.2d 908, at 913 (9th Cir. 1988).

    g. Federal income debt has been determined not to be consumer debt for the purposes of co-debtor protection of the automatic stay under 11 USC 1301 as the debt is imposed involuntarily for a public purpose. It arises as a result of earning money rather than consumption. *IRS v. Westberry (In re Westberry)*, 215 F3d 589, 591 (6th Cir 2000).

    h. There is a split as to whether or not student loans are per se non-consumer debts. Rather, the Courts will look to determine how the money was spent. See *In re Stewart,* 175 F.3d 796 (10th Cir. 1999). In *In re Stewart,* 175 F.3d 796 (10th Cir. 1999), the Tenth Circuit looked to the evidentiary record and determined that a substantial portion of student loans were used for family expenses as opposed to tuition, books or other direct educational expenses.

    i. Although, to our knowledge, the 6th Circuit has not addressed specifically the issue of student loans used for tuition and books, it defines the profit motive

test to determine if a debt is a consumer debt or a non-consumer debt. In *IRS v. Westberry (In re Westberry)*, 215 F.3d 589, 593 (6th Cir. 2000) the Court stated that: "The profit motive test determines that debt is not consumer debt if the debt was "incurred with an eye toward profit." *In re Booth*, 858 F.2d 1051, 1055 (5th Cir. 1988)." Later the Court in *Westberry* at 593 stated that: "The profit motive analysis is used, and is clearly appropriate, to determine whether a debt falls outside the category of consumer debt.

j. Ms. Owens took out student loans with the profit motive of earning an increased income. Without the student loans she would not have been able to afford to attend college and receive a diploma. Without the diploma, she would not have been able to become an administrative specialist. If she was not an administrative specialist her earnings would be greatly reduced.

k. The majority of Ms. Owens' student loans were used for tuition and books. Although she doesn't remember the exact amounts, she is sure that most, if not all, of the student loans were used for tuition and books. It was used for the expressed purpose of earning a degree and increasing her earnings.

l. Not all investments for profit succeed. In this case, Ms. Owens' investment did succeed. She graduated with a major in accounting and a minor in business information, which allowed her to obtain her job as an administrative specialist and realize a substantial return on her investment.

   m. If the Federal, State and Local Income Taxes and Ms. Owens' student loans are included as non-consumer debt using the 6th Circuit in *Westberry* as authority then the Debtor's have **$80,277.39** in non-consumer debt.

   n. If the car loan, medical bills, and credit card debt are all consumer debt, then the Debtor's have **$7,103.03** in consumer debt.

   **o.** Because the non-consumer debts are over $73,000 more than the consumer debts, then the **debts are not "primarily" consumer debts and the United States Trustee's Motion to Dismiss for Abuse Pursuant to 11 U.S. C. 700(b)(1), (b) (2) and (b) (3) does not apply because 700(b)(1) does not apply.**

   p. Even if 10 % of the student loans were not used for tuition and books, the figure of **$74,802.36**  ($49.275.23 (90% of the student loan debt) + $25,527.13)) is substantially more than **$12,578.06** (($5,475.03 (10% of the student loan debt)+ $7,103.03)).

6. Admit

7. Admit

8. Admit

9. Admit

   *II. The Presumption of Abuse does not Arise in this Case under Section 11 U.S.C. 707 (b) because the **debts are not primarily consumer debts**, see paragraph 5 above.*

10. Admit that there was an error by not checking 1B on the Means Test, "Declaration of non-consumer debt." That error has been corrected. Deny errors on Schedule I.

11. Admit that the exhibit of the Means Test Calculation done by the United States Trustee is attached. Deny that it more appropriately determines disposable income. (Note: Line 44 of the U.S. Trustee's attached Means Test lists $333.63 rather than $425.75 as they assert in paragraph 12 of their Motion.)

12. Admit that the U.S. Trustee's adjustments to the figures were listed. Admit that the U.S. Trustee's calculation is correct for Gross wages. Neither admits nor denies the calculation for taxes, but note if the calculation for taxes is low by 5% and all the other U.S. Trustee's calculations were correct, the Debtor would pass the Means Test. Deny that the U.S. Trustee's adjustments are correct for the prepetition priority claims. It appears that the U.S. Trustee used all of the Federal Income Tax as Priority where the Debtor determined that approximately $2,500 was non-priority.

13. Deny. Lines 48, 49 and 50 are not required to be completed because the debtor has more non-consumer debts than consumer debts, see paragraph 5 above.

14. Admit that the U.S. Trustee is accurate in what Section 707(b)(2) states, but notes that it doesn't apply in this case because the debts are not primarily consumer debts.

15. Deny. The presumption of abuse does not arise in this case for the reason that debtor debts are not primarily consumer debts.

16. Admit that the U.S. Trustee is accurate in what Section 707(b)(1) and (b)(2) states, but notes that it doesn't apply in this case because the debts are not primarily consumer debts.

17. Admit, but notes that it doesn't apply in this case because the debts are not primarily consumer debts.

18. Admit that the Debtor is not claiming either of these special circumstances.

19. Deny. There is no presumption of abuse because the debts are not primarily consumer debts and Section 707(b)(1) does not apply.

20. Deny. This case should not be dismissed because the debts are not primarily consumer debts and Section 707(b)(1) does not apply.

21. Admit that Debtor anticipates earning $52,512 this year and has so reported on her Schedule I along with her 5% 401k contribution. After subtracting her 401 k contribution of 5% her income will be $49,886, which is consistent with her 2012, 2011 and 2010 earnings as reported on her income tax 1040 returns. Deny the U.S. Trustee's conclusion that Debtor has under-reported by $360 per month. Schedule I asks Debtor to "Estimate or average or projected monthly income at time case filed." The debtor's income is not uniform throughout the year. She earns more in some months than in other months depending on the amount of overtime pay she receives. Consequently, anticipated earnings based on 6 months average may be skewed and the prediction might be greater than the actual earnings. The U.S. Attorney was emailed the 2011 and 2012 Federal Income Tax Returns on April 18, 2013 at the same time the pay stubs were emailed. The debtor anticipates earning approximately $50,000 taxable income (total income – 401k). $52,512 is approximately $2,000 more than she has earned in the past (note all 3 previous years round to $50,000 when rounded to the nearest thousand), see table below.

| Tax Year | Wages Reported on Fed Income Tax | Fed 1040 Adjusted Gross Income | Wage Income + 401k contribution |
|---|---|---|---|
| 2010 | $46,813.00 | $46,813.00 | $49,153.65 |
| 2011 | $48,035.00 | $48,035.00 | $50,436.75 |
| 2012 | $47,813.00 | $47,686* | $50,203.65 |
|  |  | Average | $49,931.35 |

* There was a deduction for student loan

22. Deny the U.S. Trustee's assertion that the repayment to the IRS and the US Department of Education are "generous monthly allowances" and "not reasonably necessary for the Debtor's maintenance and support at this level."

Schedule J asks the Debtor to "Complete this schedule estimating the average or projected monthly expenses of the debtor at the time the case was filed." The Debtor has complied with the instructions.

The Debtor's payroll deduction and expense budget does include a payment to the IRS in the amount of $383 for back taxes. This is reasonable and necessary. The priority debt to the IRS will not be discharged and the Debtor will have to continue to pay this amount. In addition, if the Debtor was in a Chapter 13 Plan, this money would continue to go to the IRS, as they are a priority creditor. Assuming a 60 month Chapter 13 Plan with a 6.5% administration cost the monthly amount payable to the IRS would be 378.60 ($18,829.28/60 months * 1.065). Another expense that was not listed by the Debtor is the repayment of the $4,197 to the State of Michigan for back taxes. These would also be priority. Assuming a 60

month Chapter 13 Plan with a 6.5% administration cost the monthly amount payable to the State of Michigan would be $74.50 ($4,197/60 months * 1.065). In other words, these two debts together would cost $453.10 to the debtor per month in a Chapter 13 Plan. This is far more that the Debtor's estimate. In any case, either inside a Chapter 13 Plan or outside, these debts are required by law to be repaid.

The $206 per month that the Debtor pays for her Student Loans is also a payment that she is required to pay in full. She currently owes approximately $54,750.26. At the amount she is paying if the interest rate were 4% (her rate is presumably higher) it will take her **over 30 years** to repay. The amount she will end up repaying will be over $100,000.

Both the IRS and/or the Dept of Education will take serious action (garnishment of wages) if these agreements to repay are not met.

The Debtor recognized that she had serious back tax issues. She sought the help of professional accountants. Debtor is paying $487 per month to Lothamar PC because they are assisting her with her tax problems. If she discontinued paying Lothamar PC they would discontinue their assistance with her tax issues. True she would no longer have to pay Lothamer (this contractual obligation could be terminated by her Chapter 7 Bankruptcy), but she would no longer have their services. If, for the sake of argument, she discontinued this payment, her Schedule J would still be negative **$224.52**.

23. Deny. The documentation of income and expenses do not support the U.S. Trustee's assertions. The U.S. Trustee's proposed adjustments to the Debtor's budget discussed in paragraphs 21 and 22 should not be made, see above. The

Debtor does not have $726 per month to repay prepetition creditors. The Debtor's **expenses exceed her Income by $711.52**.

24. Admit the holding in *In re Krohn.* Deny that Debtor has the ability to pay a substantial portion of the Debtor's debts, see above. Deny justification of a dismissal of the chapter 7 proceeding based on Section 707(b)(3) as that section does not apply when debts are not primarily consumer debts.

25. Deny. The debts listed in the bankruptcy schedules are primarily non-consumer debts, see paragraph 5 above. As such, there is no conclusive presumption of abuse that arises in this case because Section 707(b) does not apply. In addition, the Debtor's Schedules and documentation do not support the U.S. Trustee's assertion that the Debtor has the means to repay these debts.

**Wherefore**, Debtors respectfully request that this Honorable Court deny the U. S. Trustee's Motion to Dismiss because the **debts are not primarily consumer debts** and for the other reasons stated above.

Date:  June 7, 2013						Respectfully Submitted:

/s/Leon F. Schmelzer
Leon F. Schmelzer (P56584)
Attorney for Debtor
330 West Lake Lansing Road
Suite 2B
East Lansing, Michigan 48823
(517) 337-3225